

MRP: USAO 2008R00820

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2010 NOV 30 P 2:43

CLERK'S OFFICE
AT GREENBELT

BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| UNITED STATES OF AMERICA | * | |
|---|---|---|
| | * | |
| v. | * | CRIMINAL NO. **PJM 10 CR 0730** |
| | * | |
| WIN AUNG, | * | (False Statement to Federal Agency, |
| | * | 18 U.S.C. § 1001) |
| Defendant | * | |
| | * | |

*******

## INFORMATION

### COUNT ONE

(False Statement to a Federal Agency)

The United States Attorney for the District of Maryland charges that:

**Defendant's Position with the National Science Foundation**

1. The National Science Foundation ("NSF") was an independent agency of the Executive Branch of the United States government. NSF's mission was to promote the progress of science, advance the national health, prosperity and welfare, and secure the national defense.

2. Defendant **WIN AUNG** was a resident of Potomac, Maryland, and has been an NSF employee for more than 35 years. Since at least 1992, **AUNG** has served as a full-time Senior Staff Associate, Division of Engineering Education and Centers in the Directorate of Engineering, and has been a member of the Senior Executive Service. As an NSF executive, **AUNG** was required to and did file annual Executive Branch Personnel Public Financial Disclosure Reports, Forms SF-278, with NSF's Office of General Counsel. The forms required that he report to NSF sources of more than $5,000 in outside compensation.

## Non-Profit Corporation

3. In or about 2000, **AUNG** founded the International Network For Engineering Education and Research ("iNEER"). iNEER's stated purpose was to develop and sponsor international conferences regarding engineering education, and to issue publications relating to engineering education, among other things. iNEER was to operate as a non-profit corporation pursuant section 501(c)(3) of the Internal Revenue Code.

4. **AUNG** was the sole signatory of the articles of incorporation, and was listed as the sole director. According to iNEER's by-laws, a "Secretary-General" was to be responsible for implementing the corporation's policies under the direction of a Board of Directors. **AUNG** held himself out as the Secretary-General.

## Use of Non-Profit Funds for Personal Benefit

5. Consistent with its stated mission, iNEER sponsored conferences, which generated registration fees, published and sold engineering books, and also solicited and received donations from corporate sponsors. Between in or about 2002 and in or about 2007, iNEER received income totaling more than $800,000.

6. iNEER funds were to be used exclusively in pursuit of its goals. No part of the net earnings of the corporation were to inure to the benefit of, or be distributed to, its officers, except payments of reasonable compensation for services and in furtherance of its purposes. Accordingly, **AUNG** was permitted to spend corporate funds only for iNEER-related expenses. In annual reports and elsewhere, at all times **AUNG** represented that he volunteered his time to iNEER, received no compensation, and received only reimbursements for iNEER-related expenditures.

7. Between in or about October 2002 and in or about December 2007, **AUNG** wrote to himself and for his benefit dozens of checks totaling approximately $388,535 from an iNEER bank account. **AUNG** indicated on the checks and in other records that the funds represented reimbursement for iNEER-related expenses. In fact, **AUNG** reimbursed himself with more than $100,000 in iNEER funds for his personal benefit. Among the personal expenses for which **AUNG** sought and received reimbursement were: family vacations, including trips to Bethany Beach, Delaware, Kennedy Space Center, Florida, and Hershey Park, Pennsylvania; personal gifts, including toys, money, and gold coins for $1,681; an NSF fitness club membership; exercise equipment, such as a treadmill for $728, a Deluxe Land Rider 17" bicycle for $556, and a butterfly exercise bench; daily parking at the garage located near NSF; a Combined Federal Campaign contribution; coffee and meals during duty days at NSF; health prescriptions; electronics, such as an LG 47" LCD flat screen television for $1,574, a digital audio recorder for $616, and a 13" television; clothing; and show tickets.

8. **AUNG** also used iNEER funds to reimburse himself for personal expenses associated with his residence, including at least half of the costs associated with gas, electric and water utilities, newspaper and magazine subscriptions, phone service, cable service, a house cleaning service, and home insurance; at least $6,000 for lawn care and maintenance; and at least $45,000 for home furnishings, including re-upholstering of six dining chairs for $926, a sofa, loveseat, ottoman and recliner for $2,551, and table lamps; a 75-gallon gas water heater with installation for $1,960; two Pedmont bidets for more than $1,700; home repairs and maintenance (interior and exterior), and half of his residential property taxes.

### False Financial Disclosure Forms

9. **AUNG** did not report the funds he received from iNEER for personal expenses on Financial Disclosure Reports filed with NSF. From 2002 through 2007, **AUNG** filed annual financial disclosure reports in May or June each year following the reporting period, which required that he report sources of more than $5,000 in compensation he received from iNEER. In each report, **AUNG** falsely characterized all funds he received from iNEER as reimbursements and travel expenses; he did not report any compensation from iNEER. Whether **AUNG** received compensation from iNEER was important to the decision of NSF ethics officials to permit **AUNG** to assume and maintain his position with iNEER.

10. For example, on or about June 28, 2008, **AUNG** submitted to NSF a financial disclosure report for 2007. The 2007 form characterized $96,000 in payments from iNEER as "reimbursements" for "office expenses, supplies, business meals, [and] local transportation," and reported no compensation from iNEER in excess of $5,000. Yet as **AUNG** well knew, he had received more than $5,000 from iNEER in compensation, which was not, in fact, a reimbursement for an iNEER-related expense.

### The Charge

11. On or about June 28, 2008, in the District of Maryland and elsewhere, the defendant,

### WIN AUNG,

in a matter within the jurisdiction of the National Science Foundation, an agency of the Executive branch of the government of the United States, knowingly and willfully made a materially false, fictitious and fraudulent statement and representation, in that he submitted to NSF a financial disclosure report for 2007 that falsely characterized $96,000 in payments from iNEER as

"reimbursements" for "office expenses, supplies, business meals, [and] local transportation," and falsely reported no compensation from iNEER in excess of $5,000, as **AUNG** well knew.

18 U.S.C. § 1001(a)(2)

Dated:  November 30, 2010

Rod J. Rosenstein
United States Attorney